IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HARRIETT C. CALLIER,                    )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )    NO. 3:25-cv-00121
                                        )
STATE OF TENNESSEE, et al.,             )    JUDGE RICHARDSON
                                        )
        Defendants.                     )


## MEMORANDUM OPINION AND ORDER

Plaintiff Harriett Callier, a Tennessee resident proceeding pro se, has filed a Complaint for Declaratory and Injunctive Relief (Doc. No. 1) against the State of Tennessee, Tennessee Higher Education Commission, Tennessee Board of Regents, Tennessee State University (TSU) and the TSU Board of Trustees. Plaintiff has also filed an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2) and a Motion for Temporary Restraining Order (TRO) (Doc. No. 3, "TRO Motion".)

### I. APPLICATION TO PROCEED IFP

Plaintiff's IFP application shows that she has been unemployed since February 2024, and that her monthly expenses approximate her monthly income, which primarily comes from unemployment benefits. It also shows that she has very little in the way of assets. It therefore sufficiently demonstrates that she cannot pay the full civil filing fee in advance "without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001); *see also*, *e.g.*, *Shannon v. Omni Logistics LLC*, No. EP-23-CV-384-KC, 2023 WL 8113826, at *1 (W.D. Tex. Nov. 22, 2023) (stating that "IFP status does not require absolute destitution,"

but should be based on consideration of "whether the movant can afford the costs of proceeding without undue hardship or deprivation of the necessities of life") (citation omitted). Accordingly, the IFP application (Doc. No. 2) is **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 S. Ct. 1316, 2024 WL 2751216, at *3 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se pleading a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

B. Allegations and Claims of the Complaint and TRO Motion

Plaintiff is suing "[t]o enjoin all parties from proceeding with the sale or [transfer] of State of Tennessee properties under use and ownership of Tennessee State University including both Avon Williams Campus buildings, and adjacent properties"; to enjoin "efforts currently aimed at the privatization of the educational delivery components" of TSU; and "[t]o enjoin the State of Tennessee to more fully desegregate its state-supported higher education systems" by "establish[ing] parity" between its one historically Black university, TSU, and other, traditionally White institutions within the state. (Doc. No. 1 at 1–2.) She invokes the Court's federal-question jurisdiction, claiming that the State of Tennessee and related Defendants have deprived her of federal rights, including those recognized in *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483 (1954); Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d; and the Equal Protection Clause of the Fourteenth Amendment. (Doc. No. 1 at 12.) Plaintiff also claims that the impending sale of TSU property would violate the Morrill Act,[1] the 2001 Geier consent decree,[2] and Defendants' state and federal fiduciary obligations to TSU. (*Id.* at 37–39.)

---

[1] "Lands granted through the 1862 Morrill Act were to be surveyed and sold and the proceeds used to support the establishment and maintenance of state colleges and universities for the benefit of agriculture and the mechanic arts." *Nebmaier v. Josephine Cnty.*, No. 1:18-CV-01258-MC, 2018 WL 3613988, at *2 (D. Or. July 27, 2018), *aff'd*, 754 F. App'x 640 (9th Cir. 2019) (internal quotation marks omitted) (citing 7 U.S.C. §§ 302, 304; *McNee v. Donahue*, 142 U.S. 587, 590 (1892)). There is no indication that the Morrill Act created a private right of action for an individual aggrieved by a state university's use or disposition of lands or funds. *See id.* at *3.

[2] The *Geier* consent decree is a Court-approved agreement that, "when fully implemented" by the State of Tennessee, was to have "create[d] a system of public higher education that preserves and enhances access and educational opportunity for black and white students in Tennessee's public colleges and universities," including by "enhanc[ing] the increased enrollment of African American students at the predominantly white institutions and . . . the enrollment of white students at the State's predominantly black institution," TSU. *Geier v. Sundquist*, 128 F. Supp. 2d 519, 521 (M.D. Tenn. 2001). On September 21, 2006, the *Geier* action was dismissed with prejudice upon the following pronouncement by the Court:

> The Defendants have fully complied with the requirements of the 2001 Consent Decree, *Geier v. Sundquist*, 128 F.Supp.2d 519 (M.D. Tenn. 2001), and any remaining vestiges of segregation have been removed from the Tennessee system of public higher education, to

Plaintiff allegedly was formerly employed by TSU in a managerial role dealing with financial services. (*Id.* at 16.) But her Complaint explicitly disclaims any dispute related to her tenure as a TSU employee, limiting itself "to presenting business-related matters that violate Plaintiff's protections as an alumni, financial supporter and private citizen." (*Id.* at 12.) Plaintiff asserts that she "has taken degree-seeking classes" at TSU, and that "[a]s of late, [her] continued attendance (and that of similarly-situated residents) . . . is likely to include tuition discounts in place through state legislation." (*Id.* at 13.) Such potential discounts, as well as the sale of TSU property that Plaintiff seeks here to enjoin, would allegedly cause damage to TSU's "ability to fulfill its educational mission" insofar as they decrease funding, encourage "less fortunate" minority applicants, and therefore have a resegregating effect. (*Id.* at 4, 6, 13, 20–21.) She "brings this action to ensure [that] her rights as a citizen and resident are protected" from such damage. (*Id.* at 13.)

The TRO Motion invokes the interests of "the prospective student population and . . . the Plaintiff's public use" of the real property at issue, and asks the Court "to prohibit finalizing the sale and/or otherwise transfer of possession of State of Tennessee properties—more formally listed as Tennessee State University (TSU) land and/or buildings." (Doc. No. 3 at 1, 3.) It asserts that Plaintiff, "[a]s a Tennessee resident, financial supporter and alumnus of TSU, . . . is deprived of constitutional rights in the proposed private real estate exchange(s) of property and public interest

---

the extent practicable and as required by *United States v. Fordice*, 505 U.S. 717, 112 S. Ct. 2727, 120 L.Ed.2d 575 (1992). The State is now operating a unitary system of public higher education and the Defendants have represented to the Court that they will continue to do so. The Defendants have represented they do not intend to reinstitute or reestablish any practices or policies of its prior dual system that would foster or encourage the resegregation of the Tennessee system of public higher education, nor dismantle the unitary system they have achieved.

*Geier v. Bredesen*, 453 F. Supp. 2d 1017, 1018 (M.D. Tenn. 2006).

to offset an intentionally false and inflammatory $50 Million university deficit where the calculations are grossly overstated by 80% to prejudice the readers and actors." (*Id.* at 1–2.)[3]

C. Analysis

In conducting the initial review of the Complaint under 28 U.S.C. § 1915(e)(2), the Court must also "police the boundaries of [its] own jurisdiction." *Shaw v. Clipper*, No. 1:19CV875, 2019 WL 3207857, at *1 (N.D. Ohio July 16, 2019). The Court's jurisdiction to hear and decide the matter before it depends on the plaintiff's standing to sue. *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). As such, "[s]tanding to bring suit must be determined at the time the complaint is filed." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (citing *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004)). "When a case is at the pleading stage, the plaintiff must," at an "irreducible constitutional minimum," "clearly allege facts demonstrating each [of three] element[s]":

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000).

*State by & through Tennessee Gen. Assembly*, 931 F.3d at 507 (citation and internal quotation marks omitted). An individual plaintiff must "show that [s]he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)). She "generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on

---

[3] The Court notes that the TRO Motion lacks the supporting affidavit required by Federal Rule of Civil Procedure 65(b)(1)(A) and Local Rule 65.01(b). Because the Complaint is not verified, this lack of an affidavit is fatal to the Motion.

the legal rights or interests of third parties." *Id.* at 474 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Concomitantly, an individual plaintiff cannot ground her claim of standing "on the right, possessed by every citizen, to require that the Government be administered according to law." *Smith*, 641 F.3d at 206 (quoting *Valley Forge*, 454 U.S. at 482–83). Instead, she "must have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues' before the court." *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 8 (6th Cir. 2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Here, although Plaintiff asserts a societal interest of keen and enduring importance—the interest in avoiding policies or practices that allegedly would signal regression toward Tennessee's prior *de jure* system of dual, segregated higher education—the threshold issue of standing focuses on *her*, "not on the issues [she] wishes to have adjudicated." *Valley Forge*, 454 U.S. at 484 (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)). And by seeking—"as a Tennessee resident" invoking "rights and protections under Brown v Board" (Doc. No. 1 at 37)—to vindicate broadly applicable Fourteenth Amendment concerns, she does not present a concrete injury particularized to her. Indeed, the Fourteenth Amendment is not "enforceable by any citizen simply because citizens are the ultimate beneficiaries" of the protections against state action described therein; rather, actual injury to the plaintiff's own enjoyment of those protections is required. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974). In other words, to prosecute this lawsuit against the State of Tennessee and related entities, Plaintiff must have more than a "generalized citizen interest" in TSU's financial dealings, the makeup of its Board of Trustees, etc. *Id.* In the absence of an injury sufficient to confer standing, citizens' interests in the just administration of public institutions are redressable through the political process, not the federal courts.

Plaintiff alleges that she has personal knowledge and documentation of past financial practices at TSU that are fraudulent, wasteful, and abusive, and she claims that allowing such practices to continue into the future under the newly nominated, all-Black TSU Board of Trustees (which must apply the funding formula prescribed by the Focus on College and University Success Act of 2016 despite its unintentionally segregating effects) would undermine "principles of desegregation and equality," flout the terms of the *Geier* consent decree, and otherwise damage "TSU's ability to serve the Plaintiff and the public interest." (Doc. No. 1 at 1–12.) Critically, however, Plaintiff has *not* alleged that she personally has suffered (or imminently will suffer) any particular injury as a result of these financial practices, property transfers, efforts to privatize TSU's "educational delivery components," or government reluctance to pursue parity between historically Black TSU and other, traditionally White state universities. (*See id.* at 1–2.) It does not appear that she is a current student or applicant (or the financial sponsor of a current student or applicant) for enrollment at TSU. She claims that "[t]he attempted rush sale, transfer, rental, or other[] repurpose[ing] of TSU property . . . disproportionately affects underserved communities and would exacerbate existing educational inequities, contravening the public's interest in equal access to education." (*Id.* at 33.) She elsewhere claims that the sale of property "would cause permanent damage to the university's ability to fulfill its educational mission." (*Id.* at 20–21.) These are not the sort of concrete (*i.e.*, real, not abstract) and particularized (*i.e.*, harming or threatening the plaintiff personally) injuries-in-fact that could establish Plaintiff's standing to bring an individual lawsuit against the State. *See Thompson*, 748 F. App'x at 8.

Alternatively, even if Plaintiff could point to a concrete and particularized injury, she has not claimed that the injury resulted from any Defendant's intentional discrimination on the basis of race, as would be required to press a Title VI cause of action, *see Alexander v. Sandoval*, 532

U.S. 275, 280–81 (2001) (Title VI "prohibits only intentional discrimination"), or a cause of action based on an alleged returning to *de jure* segregation in violation of either *Brown v. Board of Education* or the Equal Protection Clause. *Spurlock v. Fox*, 716 F.3d 383, 396–97 (6th Cir. 2013) (requiring a showing of discriminatory or "segregative" intent to prevail on a claim of *de jure* segregation) (citing, *e.g.*, *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65 (1977) (violation of the Equal Protection Clause requires "[p]roof of racially discriminatory intent or purpose," not mere "racially disproportionate impact"). Rather, Plaintiff at most claims that intentional fiscal mismanagement has produced injurious, discriminatory effects upon TSU and "the public[] interest in equal access to education." (*See* Doc. No. 1 at 22–34, 33.) She is not plausibly entitled to relief on such claims under any theory advanced in the Complaint.

In sum, Plaintiff does not have standing to bring this lawsuit. The Court therefore lacks jurisdiction over the Complaint and must dismiss it on those grounds. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiff's TRO Motion will be denied as moot.

### III. CONCLUSION

For the above reasons, this case is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B). Plaintiff's TRO Motion (Doc. No. 3) is **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE